UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| EX REL.  [UNDER SEAL] | ) | C.A. No. |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | COMPLAINT |
| [UNDER SEAL] | ) | |
| Defendant | ) | |
| | ) | |

# FILED IN CAMERA AND UNDER SEAL

Janet L. Goldstein
MARTYN LILES, PLLC
1054 31ˢᵗ Street, NW
Washington, D.C. 20007
Tel: (202) 965-3060
Fax: (202) 965-3063

Peter W. Chatfield
PHILLIPS & COHEN LLP
2000 Massachusetts Ave., NW
Washington, D.C. 20036
Tel: (202) 833-4567
Fax: (202) 833-1815

Jonathan A. Willens (JW-9180)
JONATHAN A. WILLENS LLC
217 Broadway, Suite 707
New York, New York 10007
Tel:  (212) 619-3749
Fax:  (800) 879-7938

Attorneys for *qui tam*
plaintiff Ann-Marie Shaw

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. ANN-MARIE SHAW<br>    and<br><br>STATE OF CALIFORNIA ex rel.ANN-MARIE SHAW<br>DISTRICT OF COLUMBIA ex rel.ANN-MARIE SHAW<br>STATE OF FLORIDA ex rel.ANN-MARIE SHAW<br>STATE OF HAWAII ex rel.ANN-MARIE SHAW<br>STATE OF ILLINOIS ex rel.ANN-MARIE SHAW<br>COMMONWEALTH OF MASSACHUSETTS<br>    ex rel.ANN-MARIE SHAW<br>STATE OF NEVADA ex rel.ANN-MARIE SHAW<br>COMMONWEALTH OF VIRGINA<br>    ex rel.ANN-MARIE SHAW<br>CITY OF NEW YORK ex rel.ANN-MARIE SHAW,<br><br>                    Plaintiffs,<br><br>            v.<br><br>CA, INC.,<br><br>                    Defendant. | C.A. No. _____<br>COMPLAINT FOR<br>VIOLATIONS OF<br>FEDERAL AND STATE<br>FALSE CLAIMS ACTS<br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED<br><br>FILED IN CAMERA<br>AND UNDER SEAL |

Through her attorneys, plaintiff and qui tam relator Ann-Marie Shaw, for her Complaint against Defendant CA, Inc. ("CA"), formerly known as Computer Associates International, Inc., alleges as follows:

## FACTS COMMON TO ALL COUNTS

**A.      Introduction**

1.     This is a civil action to recover damages and civil penalties arising from false and/or fraudulent statements, records, and claims made and caused to be made by the Defendant CA and/or its agents and employees in violation of the Federal Civil False Claims Act, 31 U.S.C. §3729 et seq., as amended ("FCA"), and of analogous State and Municipal qui tam statutes.

2.     This qui tam case is brought by the Relator Ann-Marie Shaw ("Shaw") on behalf of the United States pursuant to 31 U.S.C. §3730(b) and on behalf of the States of California (and its political subdivisions), Florida, Hawaii, Illinois, Massachusetts (and its political subdivisions), Nevada (and its political subdivisions), Virginia (including its political subdivisions),  and the District of Columbia and the City of New York (hereafter, collectively, "the States and Municipalities") under the States' and Municipalities' respective qui tam statutes.

**B.      Parties**

3.     Relator Ann-Marie Shaw is a resident of Clearwater, Florida.  Ms. Shaw has worked for Defendant CA in Tampa, Florida since July 2003 as a technical sales specialist.  Ms. Shaw specializes in the sale of CA's software product licenses to the Federal Government.  Based on knowledge she has gained as a CA employee, Ms. Shaw has become aware of the false claims and false statements by Defendant that are the subject of this Complaint.

4.     CA is a Delaware corporation with its headquarters and principle place of business in Islandia, New York. CA designs, markets and licenses computer software for businesses

2

throughout the world. CA's reported revenue for fiscal year 2005 was $3.5 billion. CA markets
and licenses its software products to numerous federal, state and municipal government entities
throughout the United States.

**C.     Jurisdiction and Venue**

5.     This Court has jurisdiction over the subject matter of this action pursuant to both 28
U.S.C. §1331 and 31 U.S.C. §3732, and has pendant jurisdiction over the state and municipal
claims pursuant to 28 U.S.C. §1367 and 31 U.S.C. §3732b.

6.     Venue is proper in this District pursuant to 31 U.S.C. §3732(a) because the
Defendant can be found in, resides in, and transacts business in the Eastern District of New
York, and because acts in furtherance of the pattern and practice of misconduct alleged in this
action have occurred in this District.

**D.     General Allegations**

7.     CA is a provider of management software. Its customers include government
agencies, businesses, academic institutions and non-profit organizations world-wide.   CA
licenses its software products to customers pursuant to license agreements.

8.     CA sells software licenses to customers through its employee sales force and through
authorized resellers who are trained and certified by CA.  CA authorized resellers provide
potential customers with quotes for CA products, and, if the quote is accepted, send an invoice or
purchase order to and collect payment from the customer.  The customer order is forwarded to a
CA distributor who in turn transmits the order to CA's order department. CA employees review
the order and, upon approval, send the licenses to the customer.  Payment from the purchaser for
the order is also transmitted from the reseller to the distributor and finally to CA, minus fees
payable to the reseller and distributor for their services on behalf of CA.

9.     In addition to licenses for software products, CA also sells through its employee sales force and authorized resellers maintenance protection plans for software licenses purchased by CA customers. This maintenance protection is also referred to as "software maintenance," "software protection," "upgrade protection," and "maintenance renewal." Maintenance protection plans may be purchased by a customer for a fixed term of one, two or three years. The majority of CA's customers purchase maintenance protection with their initial software purchase and continue renewing their maintenance protection on an annual basis.

10.     The maintenance protection sold by CA includes free upgrades to all new releases of covered software products throughout the maintenance term, free patches for errors or bugs in covered products, and free telephone and web-based technical support.

11.     Revenue from CA's maintenance protection plans comprises a significant portion of the company's total revenues and CA vigorously markets these plans to its customers

**E.     CA's Scheme to Defraud Purchasers of CA's Maintenance Protection Plans**

12.     Beginning at a time unknown but not later than July 2003 and continuing through the present, CA devised a scheme to defraud customers, including federal, state and local government entities (hereinafter "government customers") of the full value of the maintenance protection plans they purchased and to cause these customers to overpay CA for maintenance protection.   As a result of this scheme, CA's government customers have been damaged, and continue to be damaged, in an amount not yet determined, but that is in the millions of dollars. This scheme was and continues to be accomplished in the following manner:

13.     Most CA customers purchase maintenance protection with their initial software license purchase, generally for a one year term.  The term of the maintenance plan commences at the time the customer order is received and approved by CA.

4

14.   Approximately three months prior to the expiration date of any CA maintenance plan, CA sends the customer who purchased the plan a notice stating that "the maintenance protection on [the customer's] CA software is about to expire" and urging the customer to renew the maintenance plan prior to the expiration date.  The expiration notification includes the date on which the maintenance plan is allegedly due to expire.  A sample expiration notification is attached to this complaint as Exhibit 1.

15.   In its expiration notification, CA warns its customers to renew their maintenance protection before expiration to avoid any lapses in technical support and upgrade fees. Customers are told that "[b]y keeping the software maintenance active [they] can save up to 40% off the cost of purchasing upgrades or full products."  Customers are directed to place their maintenance renewal orders with a CA reseller.

16.   In addition to sending its customers expiration notifications, CA provides its employee sales force as well as its authorized resellers with a list of customers whose maintenance will expire within the next three months.  CA sales representatives and resellers telephone and/or email customers and urge them to renew their maintenance plans as soon as possible.

17.   As a result of CA's marketing campaign, and in order to avoid any lapse in maintenance protection, many customers, including  government customers, place their orders for maintenance renewal days, weeks and even months before the expiration of their current maintenance plan.  Government customers also may place renewal orders early because their funding authorizations often require them to make purchases within a given fiscal year or time frame.

5

18.   Unbeknownst to these customers who, at CA's behest, place their renewal orders early, CA does not start the term of the maintenance plan purchased at the expiration of the maintenance plan previously in place.   Rather, in its internal records, CA records the start of the new maintenance term as the date on which the maintenance order is received and approved by CA, despite the fact that the current maintenance plan is still in effect.   By running the new maintenance plan concurrently with the prior maintenance plan, CA fraudulently shortens the term of the new maintenance plan purchased and thereby knowingly deprives the customer of the full value of the purchase.

19.   In order to prevent its customers from realizing that CA is short-changing them of the full value of the maintenance plan purchased, CA omits material facts in the maintenance expiration notices it sends to its customers.   For example, while CA urges its customers in the expiration notices it sends to "take action right now" to renew their maintenance protection, CA fails to disclose the material fact that, if the customer sends in its renewal order before the expiration date of the maintenance plan currently in place, CA will start the new maintenance term when the maintenance order is received rather than at the expiration of the current maintenance term.

**F.**     **Examples of Maintenance Renewal Fraud Perpetuated on Federal and Federally-Funded Purchasers:**

**National Gallery of Art**

20.   In December 2004, the National Gallery of Art, a federally-funded entity, purchased through a CA reseller product licenses and a one-year maintenance plan for a series of software data backup and protection programs known as BrightStor ARCserve Backup.   CA received a net payment (after fees were paid to the reseller and distributor) of $15,188.82 for this purchase.

6

The order was processed and approved by CA on or about December 16, 2004.  In its internal records, CA recorded a maintenance expiration date for these programs of December 15, 2005.

21.  In October 2005, the National Gallery of Art placed a one-year maintenance plan renewal order for its licenses for the BrightStor ARCserve Backup software programs that was processed and approved by CA on October 6, 2005.  CA received a net payment of $4,479 for this maintenance renewal purchase.  Rather than start the new maintenance plan on December 16, 2005, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on October 6, 2005, and recorded the plan's expiration date as October 5, 2006.  As a result, the National Gallery of Art was short-changed approximately 71 days of maintenance protection.

**United States Army Special Operations Command**

22.  In September 2004, the United States Army Special Operations Command (USASOC) purchased through a CA reseller a one-year maintenance plan for its licenses for a security software program known as eTrust Intrusion Detection.  CA received a net payment (after fees were paid to the reseller and distributor) of $25,847.32 for this purchase.  The order was processed and approved by CA on or about September 28, 2004.   In its internal records, CA recorded a maintenance expiration date for this program of September 27, 2005.

23.  In August 2005, the USASOC placed another one-year maintenance plan renewal order for its licenses for the eTrust Intrusion Detection program that was processed and approved by CA on or about August 12, 2005.  CA received a net payment (after fees were paid to the reseller and distributor) of $23,591.63 for this purchase.  Rather than start the new maintenance plan on September 28, 2005, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on August 12, 2005, and recorded the plan's expiration date as

August 11, 2006. As a result, the USASOC was short-changed approximately 47 days of maintenance protection.

**TriCare Management Activity**

24.   In October 2004, the TriCare Management Activity, the United States Department of Defense's managed health care program for the military, purchased through a CA reseller product licenses and a one-year maintenance plan for a database software program known as AllFusion ERwin Data Modeler. CA received a net payment (after fees were paid to the reseller and distributor) of $14,140.25 for this purchase. The order was processed and approved by CA on or about October 19, 2004. In its internal records, CA recorded a maintenance expiration date for these programs of October 18, 2005.

25.   In June 2005, the TriCare Management Activity placed a one-year maintenance plan renewal order for its licenses for the AllFusion ERwin Data Modeler program that was processed and approved by CA on June 29, 2005. CA received a net payment of $5,177.52 for this maintenance renewal purchase. Rather than start the new maintenance plan on October 19, 2005, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on June 29, 2005, and recorded the plan's expiration date as June 28, 2006. As a result, the TriCare Management Activity was short-changed approximately 112 days of maintenance protection.

**United States Army Research, Development, & Acquisition Information Systems Agency**

26.   In March 2004, the United States Army Research, Development, & Acquisition Information Systems Agency (USARDAISA) purchased through a CA reseller product licenses and a one-year maintenance plan for the AllFusion ERwin Data Modeler, and for a model management program and read-only access program known respectively as the All Fusion Model

8

Manager and the AllFusion Model Navigator. CA received a net payment (after fees were paid

to the reseller and distributor) of $39,711.08 for this purchase. The order was processed and

approved by CA on or about March 26, 2004.

27. In February 2005, the USARDAISA placed a one-year maintenance plan renewal

order for its licenses for these programs that was processed and approved by CA on February 16,

2005. CA received a net payment of $9,713.68 for this maintenance renewal purchase. Rather

than start the new maintenance plans on March 26, 2005, when the maintenance plans that were

then in effect expired, CA started the plans' one-year term on February 16, 2005, and recorded

the plans' expiration date as February 15, 2005. As a result, the USARDAISA was short-

changed approximately 38 days of maintenance protection.

28. In February 2006, the USARDAISA placed another one-year maintenance plan

renewal order for its licenses for these programs that was processed and approved by CA on

February 6, 2006. CA received a net payment of $9,699.75 for this maintenance renewal

purchase. Rather than start the new maintenance plans on February 16, 2006, when the

maintenance plans that were then in effect expired, CA started the plans' one-year term on

February 6, 2006, and recorded the plans' expiration date as February 5, 2007. As a result, the

USARDAISA was short-changed an additional 10 days of maintenance protection.

**United States Department of State**

29. In March 2005, the United States Department of State purchased through a CA

reseller a one-year maintenance plan for its licenses for the AllFusion ERwin Data Modeler. CA

received a net payment (after fees were paid to the reseller and distributor) of $12,943.80 for this

purchase. The order was processed and approved by CA on or about March 11, 2005. In its

9

internal records, CA recorded a maintenance expiration date for these programs of March 11, 2006.

30.   In February 2006, the United States Department of State placed another one-year maintenance plan renewal order for its licenses for the AllFusion ERwin Data Modeler program that was processed and approved by CA on February 21, 2006.  CA received a net payment of $12,943.80 for this maintenance renewal purchase.  Rather than start the new maintenance plan on March 11, 2006 when the maintenance plan that was then in effect expired, CA started the plan's one-year term on February 21, 2006, and recorded the plan's expiration date as February 20, 2007.  As a result, the United States Department of State was short-changed approximately 19 days of maintenance protection.

**United States Department of Justice**

31.   In October 2004, the United States Department of Justice purchased through a CA reseller product licenses and a one-year maintenance plan for the AllFusion ERwin Data Modeler.  CA received a net payment (after fees were paid to the reseller and distributor) of $4,428.41 for this purchase.  The order was processed and approved by CA on or about October 21, 2004.  In its internal records, CA recorded a maintenance expiration date for these programs of October 20, 2005.

32.   In September 2005, the United States Department of Justice placed another one-year maintenance plan renewal order for its licenses for the AllFusion ERwin Data Modeler program that was processed and approved by CA on September 28, 2005.  CA received a net payment of $1,294.38 for this maintenance renewal purchase.  Rather than start the new maintenance plan on October 21, 2005, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on September 28, 2005, and recorded the plan's expiration date as

September 27, 2006. As a result, the United States Department of Justice was short-changed approximately 23 days of maintenance protection.

**G.     Examples of Maintenance Renewal Fraud Perpetuated on State and Municipal Purchasers:**

**California**

**Los Angeles County Sanitation District**

33.    In March 2005, the Los Angeles County Sanitation District purchased through a CA reseller a one-year maintenance plan for its licenses for the AllFusion ERwin Data Modeler. CA received a net payment (after fees were paid to the reseller and distributor) of $4,530.33 for this purchase. The order was processed and approved by CA on or about March 25, 2005. In its internal records, CA recorded a maintenance expiration date for these programs of March 31, 2006.

34.    In January 2006, the Los Angeles County Sanitation District placed another one-year maintenance plan renewal order for its licenses for the AllFusion ERwin Data Modeler program that was processed and approved by CA on January 23, 2006. CA received a net payment of $4,530.33 for this maintenance renewal purchase. Rather than start the new maintenance plan on April 1, 2005, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on January 23, 2006, and recorded the plan's expiration date as January 22, 2007. As a result, the Los Angeles County Sanitation District was short-changed approximately 68 days of maintenance protection.

**California Teachers Retirement System**

35.    In June 2004, the California Teachers Retirement System purchased through a CA reseller product licenses and a two-year maintenance plan for CA's Desktop Management Suite

11

program. CA received a net payment (after fees were paid to the reseller and distributor) of $86,632 for this purchase. The order was processed and approved by CA on or about June 30, 2004. In its internal records, CA recorded a maintenance expiration date for these programs of June 29, 2006.

36. In May 2006, the California Teachers Retirement System placed a one-year maintenance plan renewal order for its licenses for the CA Desktop Management Suite that was processed and approved by CA on May 24, 2006. CA received a net payment of $13,547.60 for this maintenance renewal purchase. Rather than start the new maintenance plan on June 30, 2006, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on May 24, 2006, and recorded the plan's expiration date as May 23, 2007. As a result, the California Teachers Retirement was short-changed approximately 37 days of maintenance protection.

**City of Santa Maria**

37. In February 2005, the City of Santa Maria purchased through a CA reseller a one-year maintenance plan for its licenses for virus protection software known as eTrust Antivirus. CA received a net payment (after fees were paid to the reseller and distributor) of $2,323.69 for this purchase. The order was processed and approved by CA on or about February 24, 2005.

38. In January 2006, the City of Santa Maria placed a two-year maintenance plan renewal order for its licenses for the eTrust Antivirus program that was processed and approved by CA on January 12, 2006. CA received a net payment of $6,015.00 for this maintenance renewal purchase. Rather than start the new maintenance plan on February 24, 2006, when the maintenance plan that was then in effect expired, CA started the plan's two-year term on January

12, 2006, and recorded the plan's expiration date as January 11, 2008.  As a result, the City of

Santa Maria was short-changed approximately 43 days of maintenance protection.

**Superior Courts of California**

39.  In December 2004, the Superior Courts of California purchased through a CA

reseller a one-year maintenance plan for its licenses for the BrightStor ARCserve Backup soft-

ware programs.  CA received a net payment (after fees were paid to the reseller and distributor)

of $2,731.93 for this purchase.  The order was processed and approved by CA on or about

December 29, 2004.  In its internal records, CA recorded a maintenance expiration date for these

programs of December 28, 2005.

40.  In November 2005, the Superior Courts of California placed another one-year

maintenance plan renewal order for its licenses for the BrightStor ARCserve Backup software

programs that was processed and approved by CA on November 28, 2005.  CA received a net

payment of $2718.00 for this maintenance renewal purchase.  Rather than start the new main-

tenance plan on December 29, 2005, when the maintenance plan that was then in effect expired,

CA started the plan's one-year term on November 28, 2005, and recorded the plan's expiration

date as November 27, 2006.  As a result, the Superior Courts of California were short-changed

approximately 31 days of maintenance protection.

**District of Columbia**

**Office of the DC Auditor**

41.  In May 2004, the Office of the DC Auditor purchased through a CA reseller product

licenses and a two-year maintenance plan for the BrightStor ARCserve Backup software

programs.  CA received a net payment (after fees were paid to the reseller and distributor) of

$1,486.70 for this purchase. The order was processed and approved by CA on or about May 17, 2004.

42.   In March 2006, the Office of the DC Auditor placed a two-year maintenance plan renewal order for its licenses for the BrightStor ARCserve Backup software programs that was processed and approved by CA on March 9, 2006. CA received a net payment of $724.50 for this maintenance renewal purchase. Rather than start the new maintenance plan on May 17, 2006, when the maintenance plan that was then in effect expired, CA started the plan's two-year term on March 9, 2006, and recorded the plan's expiration date as March 8, 2008. As a result, the Office of the DC Auditor was short-changed approximately 69 days of maintenance protection.

**Florida**

**The Supreme Court of Florida**

43.   In September 2003,  the Supreme Court of Florida purchased through a CA reseller a one-year maintenance plan for its licenses for the AllFusion ERwin Data Modeler. CA received a net payment (after fees were paid to the reseller and distributor) of $1,438.00 for this purchase. The order was processed and approved by CA on or about September 30, 2003.

44.   In June 2004, the Supreme Court of Florida placed another one-year maintenance plan renewal order for its licenses for the AllFusion ERwin Data Modeler program that was processed and approved by CA on June 29, 2004. CA received a net payment of $1,308.31 for this maintenance renewal purchase. Rather than start the new maintenance plan on September 30, 2004, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on June 29, 2004, and recorded the plan's expiration date as June 29, 2005. As a

14

result, the Supreme Court of Florida was short-changed approximately 92 days of maintenance protection.

**Florida Department of Law Enforcement**

45.   In December 2003, the Florida Department of Law Enforcement purchased through a CA reseller a one-year maintenance plan for its licenses for the AllFusion ERwin Data Modeler.  CA received a net payment (after fees were paid to the reseller and distributor) of $10,081.33 for this purchase.  The order was processed and approved by CA on or about December 19, 2003.

46.   In December 2004, the Florida Department of Law Enforcement placed another one-year maintenance plan renewal order for its licenses for the AllFusion ERwin Data Modeler program that was processed and approved by CA on December 9, 2004.  CA received a net payment of $9,074.59 for this maintenance renewal purchase.  Rather than start the new maintenance plan on December 19, 2004, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on December 9, 2004, and recorded the plan's expiration date as December 8, 2005.  As a result, the Florida Department of Law Enforcement was short-changed approximately 10 days of maintenance protection.

**Hawaii**

**Hawaii Department of Public Safety**

47.   In April 2005, the Hawaii Department of Public Safety purchased through a CA reseller product licenses and a one-year maintenance plan for the BrightStor ARCserve Backup software programs.  CA received a net payment (after fees were paid to the reseller and distributor) of $6,736.92 for this purchase.  The order was processed and approved by CA on or about April 20, 2005.

48.   In April 2006, the Hawaii Department of Public Safety placed a two-year mainten-

ance plan renewal order for its licenses for the BrightStor ARCserve Backup software programs

that was processed and approved by CA on April 5, 2006.  CA received a net payment of

$5,023.50 for this maintenance renewal purchase.  Rather than start the new maintenance plan on

April 20, 2006, when the maintenance plan that was then in effect expired, CA started the plan's

two-year term on April 5, 2006, and recorded the plan's expiration date as April 4, 2008.  As a

result, the Hawaii Department of Public Safety was short-changed approximately 15 days of

maintenance protection.

**Illinois**

**Illinois Department of Public Aid**

49.   In July 2004, the Illinois Department of Public Aid purchased through a CA reseller

a one-year maintenance plan for its licenses for the AllFusion ERwin Data Modeler and the

AllFusion Model Manager programs.  CA received a net payment (after fees were paid to the

reseller and distributor) of $9,055.80 for this purchase.  The order was processed and approved

by CA on or about July 16, 2004.

50.   In May 2005, the Illinois Department of Public Aid placed another one-year

maintenance plan renewal order for its licenses for the AllFusion ERwin Data Modeler and the

AllFusion Model Manager programs that was processed and approved by CA on May 12, 2005.

CA received a net payment of $9,055.80 for this maintenance renewal purchase.  Rather than

start the new maintenance plan on July 16, 2005, when the maintenance plan that was then in

effect expired, CA started the plan's one-year term on May 12, 2005, and recorded the plan's

expiration date as May 11, 2006.  As a result, the Illinois Department of Public Aid was short-

changed approximately 65 days of maintenance protection.

**Illinois State Police**

51.   In November or December 2004, the Illinois State Police purchased through a CA reseller licenses and a one-year maintenance plan for the AllFusion Modeling Suite Bundle program.  CA received a net payment (after fees were paid to the reseller and distributor) of $3,547.72 for this purchase.  The order was processed and approved by CA on or about December 1, 2004.  In its internal records, CA recorded a maintenance expiration date for these programs of November 30, 2005.

52.   In October 2005, the Illinois State Police placed a one-year maintenance plan renewal order for its licenses for the AllFusion Modeling Suite Bundle program that was processed and approved by CA on October 21, 2005.  CA received a net payment of $1,133.19 for this maintenance renewal purchase.  Rather than start the new maintenance plan on December 1, 2005, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on October 21, 2005, and recorded the plan's expiration date as October 20, 2006.  As a result, the Illinois State Police Aid was short-changed approximately 41 days of maintenance protection.

**Massachusetts**

**Massachusetts Division of Medical Assistance**

53.   In October 2004, the Massachusetts Division of Medical Assistance purchased through a CA reseller a one-year maintenance plan for its licenses for the AllFusion ERwin Data Modeler and the AllFusion Model Manager programs.  CA received a net payment (after fees were paid to the reseller and distributor) of $9,069.73 for this purchase.  The order was processed and approved by CA on or about October 1, 2004.  In its internal records, CA recorded a maintenance expiration date for these programs of September 30, 2005.

17

54.   In September 2005, the Massachusetts Division of Medical Assistance placed another one-year maintenance plan renewal order for its licenses for the AllFusion ERwin Data Modeler and the AllFusion Model Manager programs that was processed and approved by CA on September 15, 2005.  CA received a net payment of $9,055.80 for this maintenance renewal purchase.  Rather than start the new maintenance plans on October 1, 2005, when the mainten-ance plans that were then in effect expired, CA started the plans' one-year term on September 15, 2005, and recorded the plans' expiration date as September 14, 2006.  As a result, the Massachu-setts Division of Medical Assistance was short-changed approximately 16 days of maintenance protection.

**Massachusetts State Treasury**

55.   In December 2003, the Massachusetts State Treasury purchased through a CA reseller product a one-year maintenance plan for its licenses for the BrightStor ARCserve Backup software programs.  CA received a net payment (after fees were paid to the reseller and distributor) of $2,071.93 for this purchase.  The order was processed and approved by CA on or about December 23, 2003.

56.   In November or December 2004, the Massachusetts State Treasury placed another one-year maintenance plan renewal order for its licenses for the BrightStor ARCserve Backup software programs that was processed and approved by CA on December 1, 2004.  CA received a net payment of $3,150.90 for this maintenance renewal purchase.  Rather than start the new maintenance plan on December 23, 2004, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on December 1, 2004, and recorded the plan's expiration date as November 30, 2005.  As a result, the Massachusetts State Treasury was short-changed approximately 22 days of maintenance protection.

18

**Nevada**

**Nevada Legislative Counsel Bureau**

57.   In February 2004, the Nevada Legislative Counsel Bureau purchased through a CA reseller product a two-year maintenance plan for its licenses for the BrightStor ARCserve Backup software programs.  CA received a net payment (after fees were paid to the reseller and distributor) of $5,377.95 for this purchase.  The order was processed and approved by CA on or about February 20, 2004.  In its internal records, CA recorded a maintenance expiration date for these programs of February 19, 2006.

58.   In January 2006, the Nevada Legislative Counsel Bureau placed another two-year maintenance plan renewal order for its licenses for the BrightStor ARCserve Backup software programs that was processed and approved by CA on January 18, 2006.  CA received a net payment of $2,830.50 for this maintenance renewal purchase.  Rather than start the new mainten-ance plan on February 20, 2006, when the maintenance plan that was then in effect expired, CA started the plan's two-year term on January 18, 2006, and recorded the plan's expiration date as January 17, 2008.  As a result, the Nevada Legislative Counsel Bureau was short-changed approximately 33 days of maintenance protection.

**Las Vegas Clark County Public Library**

59.   In February 2005, the Las Vegas Clark County Public Library purchased through a CA reseller product a one-year maintenance plan for its licenses for the BrightStor ARCserve Backup software programs.  CA received a net payment (after fees were paid to the reseller and distributor) of $1,788.27 for this purchase.  The order was processed and approved by CA on or about February 25, 2005.

19

60.   In February 2006, the Las Vegas Clark County Public Library placed a two-year maintenance plan renewal order for its licenses for the BrightStor ARCserve Backup software programs that was processed and approved by CA on February 1, 2006.  CA received a net payment of $4,731.00 for this maintenance renewal purchase.  Rather than start the new maintenance plan on February 25, 2006, when the maintenance plan that was then in effect expired, CA started the plan's two-year term on February 1, 2006, and recorded the plan's expiration date as January 31, 2008.  As a result, the Las Vegas Clark County Public Library was short-changed approximately 24 days of maintenance protection.

**Virginia**

**Virginia Department of Transportation**

61.   In October 2003, the Virginia Department of Transportation purchased through a CA reseller a one-year maintenance plan for its licenses for the AllFusion ERwin Data Modeler and the AllFusion Model Manager programs.  CA received a net payment (after fees were paid to the reseller and distributor) of $16,104.60 for this purchase.  The order was processed and approved by CA on or about October 31, 2003.  In its internal records, CA recorded a maintenance expiration date for these programs of October 30, 2004.

62.   In September or October 2004, the Virginia Department of Transportation placed a three-year maintenance plan renewal order for its licenses for the AllFusion ERwin Data Modeler and the AllFusion Model Manager programs that was processed and approved by CA on October 1, 2004.  CA received a net payment of $43,496.35 for this maintenance renewal purchase.  Rather than start the new maintenance plan on October 31, 2004, when the maintenance plans that were then in effect expired, CA started the plans' one-year term on October 1, 2004, and recorded the plans' expiration date as September 30, 2007.  As a result, the Virginia

20

Department of Transportation was short-changed approximately 30 days of maintenance protection.

## Virginia Department of Labor & Industry

63.   In November 2003, the Virginia Department of Labor & Industry purchased through a CA reseller a two-year maintenance plan for its licenses for the eTrust Antivirus program.  CA received a net payment (after fees were paid to the reseller and distributor) of $2407.93 for this purchase.  The order was processed and approved by CA on or about November 25, 2003.

64.   In November 2005, the Virginia Department of Labor & Industry placed a one-year maintenance plan renewal order for its licenses for the eTrust Antivirus program that was processed and approved by CA on November 9, 2005.  CA received a net payment of $1,665.00 for this maintenance renewal purchase.  Rather than start the new maintenance plan on November 25, 2005, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on November 9, 2005, and recorded the plan's expiration date as November 8, 2006.  As a result, the Virginia Department of Labor & Industry was short-changed approximately 16 days of maintenance protection.

## City of New York

## District Attorney of the County of New York

65.   In December 2003, the District Attorney of the County of New York purchased through a CA reseller a one-year maintenance plan for its licenses for the AllFusion Model Manager program.  CA received a net payment (after fees were paid to the reseller and distributor) of $1,435.50 for this purchase.  The order was processed and approved by CA on or about December 15, 2003.

21

66. In November 2004, the District Attorney of the County of New York placed another one-year maintenance plan renewal order for its licenses for the AllFusion Model Manager programs that was processed and approved by CA on November 19, 2004. CA received a net payment of $1,447.44 for this maintenance renewal purchase. Rather than start the new maintenance plan on December 15, 2004, when the maintenance plan that was then in effect expired, CA started the plan's one-year term on November 19, 2004, and recorded the plan's expiration date as November 18, 2006. As a result, the District Attorney of the County of New York was shortchanged approximately 26 days of maintenance protection.

67. In November 2005, the District Attorney of the County of New York placed another one-year maintenance plan renewal order for its licenses for the AllFusion Model Manager programs that was processed and approved by CA on November 11, 2005. CA received a net payment of $1,291.95 for this maintenance renewal purchase. Rather than start the new maintenance plan on November 19, 2005, when the maintenance plan that was then in effect expired, CA started the plan's one year term on November 11, 2005, and recorded the plan's expiration date as November 10, 2005. As a result, the District Attorney of the County of New York was shortchanged approximately another 8 days of maintenance protection.

## COUNT I

False Claims Act

31 U.S.C. §3729(a)(1)

68. Relator realleges and incorporates by reference the allegations in paragraphs 1 through 67 of this complaint.

69. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§3729 *et seq.,* as amended.

22

70.    Through the acts described above, Defendant has knowingly presented and caused to be presented to the United States Government – and other purchasers using federal funds – false or fraudulent claims for payment for maintenance protection on CA's software licenses.

71.    Unaware of the falsity of these claims, the United States has paid, and continues to pay, claims that would not be paid, but for Defendant's fraudulent scheme.

72.    As a result of paying these false claims, the United been damaged and continues to be damaged, in an amount not yet determined, but that is in the millions of dollars.

## COUNT II
False Claims Act
31 U.S.C. §3729(a)(2)

73.    Relator realleges and incorporates by reference the allegations in paragraphs 1 through 67 of this Complaint.

74.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§3729 *et seq.,* as amended.

75.    Through the acts described above, Defendant has knowingly made, used and caused to be made and used false records and statements and omitted material facts to get false or fraudulent claims for maintenance protection on CA's software licenses paid and approved by the United States Government and other purchasers using federal funds.

76.    The United States, unaware of the falsity of Defendant's false records, false statements and omissions of material fact, paid and continues to pay claims that would not have been paid but for Defendant's fraudulent scheme.

77.    By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in an amount not yet determined, but that is in the millions of dollars.

23

## COUNT III
### False Claims Act
### 31 U.S.C. §3729(a)(4)

78.     Relator realleges and incorporates by reference the allegations in paragraphs 1 through 67 of this Complaint.

79.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§3729 *et seq.,* as amended.

80.     Through the acts described above, Defendant, which controls access to intellectual property and pre-paid service rights to be used by the Government, with the intent to defraud the Government, delivered less intellectual property and pre-paid services than the amount for which Defendant received a receipt or certificate showing the length of time during which such intellectual property and pre-paid services were due to the Government.

81.     As a result of Defendant's fraudulent scheme, the United States has been damaged, and continues to be damaged, in an amount not yet determined, but that is in the millions of dollars.

## COUNT IV
### California False Claims Act
### Cal Govt Code §12651(a)(1) and (2)

82.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint.

83.     This is a claim for treble damages and penalties under the California False Claims Act.

24

84. By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the California State Government and its political subdivisions to approve and pay such false and fraudulent claims.

85. The California State Government and its political subdivisions, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's fraudulent scheme.

86. By reason of Defendant's acts, the State of California, and its political subdivisions have been damaged, and continue to be damaged, in a substantial amount to be determined at trial.

87. The State of California, and its political subdivisions are entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## COUNT V
### District of Columbia False Claims Act
### D.C. Code Ann. §§2-308.14 *et seq.*

88. Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of this complaint.

89. This is a claim for treble damages and penalties under the District of Columbia False Claims Act.

90. By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the District of Columbia for payment or approval.

25

91.   By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the District of Columbia approve and pay such false and fraudulent claims.

92.   By virtue of the acts described above, Defendant, which controlled access to intellectual property and pre-paid service rights to be used by the District of Columbia, with the intent to defraud the District of Columbia, delivered less intellectual property and pre-paid services than the amount for which Defendant received a receipt or certificate showing the length of time during which such intellectual property and pre-paid services were due to the Government.

93.   The District of Columbia unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's fraudulent scheme.

94.   By reason of the Defendant's acts, the District of Columbia has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

95.   The District of Columbia is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## COUNT VI

Florida False Claims Act
Fla. Stat. Ann. §68.082(2)

96.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint.

97.    This is a claim for treble damages and penalties under the Florida False Claims Act.

98.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Florida State Government for payment or approval.

99.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Florida State Government to approve and pay such false and fraudulent claims.

100.    By virtue of the acts described above, Defendant, which controls access to intellectual property and pre-paid service rights to be used by the Florida State Government, with the intent to defraud the Florida State Government, delivered less intellectual property and pre-paid services than the amount for which Defendant received a receipt or certificate showing the length of time during which such intellectual property and pre-paid services were due to the Florida State Government.

101.    The Florida State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's fraudulent scheme.

102.    By reason of Defendant's acts, the State of Florida has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

103.    The State of Florida is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## COUNT VII

Hawaii False Claims Act
Haw. Rev. Stat. §661-21(a)

104.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint.

105.    This is a claim for treble damages and penalties under the Hawaii False Claims Act.

106.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Hawaii State Government for payment or approval.

107.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Hawaii State Government to approve and pay such false and fraudulent claims.

108.    The Hawaii State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's fraudulent scheme.

109.    By reason of Defendant's acts, the State of Hawaii has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

110.    The State of Hawaii is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## COUNT VIII

Illinois Whistleblower Reward And Protection Act
740 Ill. Comp. Stat. §175/3(a)(1), (2)

111.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint.

112.    This is a claim for treble damages and penalties under the Illinois Whistleblower Reward and Protection Act.

113.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Illinois for payment or approval.

114.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Illinois to approve and pay such false and fraudulent claims.

115.    By virtue of the acts described above, Defendant, which controlled access to intellectual property and pre-paid service rights to be used by the Sate of Illinois, with the intent to defraud the State of Illinois, delivered less intellectual property and pre-paid services than the amount for which Defendant received a receipt or certificate showing the length of time during which such intellectual property and pre-paid services were due to the State of Illinois.

116.    The State of Illinois, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's fraudulent scheme.

117.    By reason of Defendant's acts, the State of Illinois has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

118.    The State of Illinois is entitled to the maximum penalty of $10,000 for each and

29

every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## COUNT IX

Massachusetts False Claims Law
Mass. Gen. Laws ch. 12 §5B(1), (2)

119.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint.

120.    This is a claim for treble damages and penalties under the Massachusetts False Claims Law.

121.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Commonwealth of Massachusetts and its political subdivisions for payment or approval.

122.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Commonwealth of Massachusetts and its political subdivisions to approve and pay such false and fraudulent claims.

123.    The Commonwealth of Massachusetts and its political subdivisions, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's fraudulent scheme.

124.    By reason of Defendant's acts, the Commonwealth of Massachusetts, and its political subdivisions have been damaged, and continue to be damaged, in substantial amount to be determined at trial.

30

125.    The Commonwealth of Massachusetts is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## COUNT X

Nevada False Claims Act
Nev. Rev. Stat. Ann. §357.040(1)(a), (b)

126.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint.

127.    This is a claim for treble damages and penalties under the Nevada False Claims Act.

128.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the State of Nevada and its political subdivisions for payment or approval.

129.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Nevada and its political subdivisions to approve and pay such false and fraudulent claims.

130.    The State of Nevada and its political subdivisions, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for fraudulent scheme.

131.    By reason of Defendant's acts, the State of Nevada, and its political subdivisions

31

have been damaged, and continue to be damaged, in a substantial amount to be determined at trial.

132.    The State of Nevada is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### COUNT XI

Virginia Fraud Against Taxpayers Act
Va. Code Ann. §8.01-216.3(a)(1), (2)

133.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint.

134.    This is a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act.

135.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the Commonwealth of Virginia, (including its political subdivisions, as defined in that Act) for payment or approval.

136.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Commonwealth of Virginia to approve and pay such false and fraudulent claims.

137.    By virtue of the acts described above, Defendant, which controlled access to intellectual property and pre-paid service rights to be used by the Commonwealth of Virginia, with the intent to defraud the Commonwealth of Virginia, delivered less intellectual property and pre-paid services than the amount for which Defendant received a receipt or certificate showing the length of time during which such intellectual property and pre-paid services were due to the

32

Commonwealth of Virginia.

138.    The Commonwealth of Virginia , unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's fraudulent scheme.

139.    By reason of the Defendant's acts, the Commonwealth of Virginia has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

140.    The Commonwealth of Virginia is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### [PROPOSED] COUNT XII

New York City False Claims Act
N.Y.C. Admin. Code, Title 7, §§7-801 *et seq.*

141.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 of this Complaint.

142.    This is a claim for treble damages and penalties under the New York City False Claims Act .

143.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims to the City of New York for payment or approval.

144.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the City of New York to approve and pay such false and fraudulent claims.

145.    By virtue of the acts described above, Defendant, which controlled access to intellectual property and pre-paid service rights to be used by the City of New York, with the

33

intent to defraud the City of New York, delivered less intellectual property and pre-paid services than the amount for which Defendant received a receipt or certificate showing the length of time during which such intellectual property and pre-paid services were due to the City of New York.

146.    The City of New York, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's fraudulent scheme.

147.    By reason of the Defendant's acts, the City of New York has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

148.    The City of New York is entitled to the maximum penalty of $15,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff/relator prays for judgment against Defendant as follows:

a) that Defendant cease and desist from violating 31 U.S.C. §3729 et seq., and the equivalent provisions of the States' and Municipalities' statutes set forth above;

b) that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. §3729;

c) that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of California has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Cal.

34

Govt Code §12651(a);

d) that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the District of Columbia has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of D.C. Code Ann. §2-308.14;

e) that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Florida has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Fla. Stat. Ann. §68.082(2);

f) that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Hawaii has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Haw. Rev. Stat. §661-21(a);

g) that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Illinois has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of 740 Ill. Comp. Stat. §175/3(a);

h) that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Massachusetts has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Mass. Gen. L. Ch. 12 §5B;

i) that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Nevada has sustained because of

35

Defendant's actions, plus a civil penalty of $10,000 for each violation of Nev. Rev. Stat. Ann. §357.040(1);

j)   that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the Commonwealth of Virginia has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Va. Code Ann. §8.01-216.3(A);

k)   that, should New York City join this action as proposed, this Court enter judgment against Defendant in an amount equal to three times the amount of damages the City of New York has sustained because of Defendant's actions, plus a civil penalty of $15,000 for each violation of N.Y.C. Admin. Code, Title 7, §§7-803.

l)   that qui tam plaintiff be awarded the maximum amount allowed pursuant to §3730(d) of the False Claims Act, and the equivalent provisions of the States' and Municipalities' statutes set forth above;

m)   that qui tam plaintiff be awarded all costs of this action, including attorneys' fees and expenses; and

n)   that all plaintiffs recover such other relief as the Court deems just and proper.

<u>Demand for Jury Trial</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, <u>qui</u> <u>tam</u> plaintiff hereby

demands a trial by jury.

Dated: July 18, 2006                               Respectfully submitted,


                                                   JONATHAN A. WILLENS LLC


                                         By: _____
                                                   Jonathan A. Willens (JW-9180)
                                                   217 Broadway, Suite 707
                                                   New York, New York  10007
                                                   Tel:  (212) 619-3749
                                                   Fax:  (800) 879-7938

                                                   Janet L. Goldstein
                                                   MARTYN LILES, PLLC
                                                   1054 31st Street, N.W., Suite 415
                                                   Washington, DC 20007
                                                   Tel: (202) 965-3060

                                                   Peter W. Chatfield
                                                   PHILLIPS & COHEN LLP
                                                   2000 Massachusetts Ave., NW
                                                   Washington, DC 20036
                                                   Tel: (202) 833-4567

                                                   Attorneys for Plaintiff-Relator
                                                   Ann-Marie Shaw

Exhibit 1

# CA SOFTWARE MAINTENANCE RENEWAL NOTICE



MICHELLE ZAMMAT
US ARMY ENVIRONMENTAL CTR
SFIM-AEC-IE, BLDG E4590-T6
MICHELLE ZAMMAT PO# W91ZL
ABER PRV GRD, MD 21010
UNITED STATES

Dear MICHELLE ZAMMAT,

No one works harder than CA to protect your business software. We continually review our records and they currently show that the maintenance protection on your CA software is about to expire.

You can take action right now to safeguard your business by renewing your CA Software Maintenance protection service in just two easy steps.

Once your protection is renewed, you'll have the peace of mind that comes from having CA Software Maintenance Service, including:

* Telephone-based technical support - as much and as often as you need it - without costly per-incident charges
* No-charge upgrades to the latest versions of CA software

CA Software Maintenance is available in two formats: Enterprise Maintenance and Value Maintenance so you can choose the level of protection that's right for your business.

Thank you for being a CA customer. We value your business and look forward to serving your company in the years ahead.

Sincerely,

Jim Tedesco
Vice President
CA

**Call your CA Software Specialist at 1-866-558-2793 or explore CA Solutions at ca.com.
To find a CA Reseller in your area, visit us online at ca.com/reseller/letter.**

Copyright © 2006 CA. All rights reserved. All trademarks, trade names, service marks and logos referenced herein belong to their respective companies. MP291610106

**Exhibit 1**

# CA SOFTWARE MAINTENANCE RENEWAL NOTICE



## Your Profile Information

Below is the customer and product license information we have on file for your company. This statement reviews only the information pertaining to the unique license number listed and all order numbers associated with it. If you have more than one license certificate with CA, you will receive one statement per license certificate.

If any of the company or contact information needs to be updated, please log in to your personal web page and make the necessary changes at ca.com/peaceofmind. User ID: 937166

### Company Information

Company Name:    US ARMY ENVIRONMENTAL CTR
Contact Name:    MICHELLE ZAMMAT
E-mail Address:    MICHELLE.ZAMMAT@US.ARMY.MIL
Ship to Address:    SFIM-AEC-IE, BLDG E4590-T6
                  MICHELLE ZAMMAT PO# W91ZL
                  ABER PRV GRD, MD 21010

### License Information

License Number:    USAG366541
License Level:    GLP
License Expire Date:    04/29/2006

Listed below is a detailed summary of orders for each unique license certificate.

Please renew your product maintenance by 04/29/2006 In order to avoid additional software fees by having to purchase product upgrades due to expired maintenance. By keeping the software maintenance active you can save up to 46% off the cost of purchasing upgrades or full products.

## Orders With Maintenance

License Number   USAG366541

| Order No. | Order Date | Units | Customer Contact | Reseller Name | Renewal Amount | Expiration Date |
|---|---|---|---|---|---|---|
| OL669037 | 04/29/05 | 10 | MICHELLE ZAMMAT | Softchoice Corporati | $14,382.00 | 04/29/06 |

## To find out more, contact your CA Reseller or call 1-866-558-2793.

If there is any discrepancy in the data displayed on this statement or on your personal web page, please contact your local CA Reseller for assistance or call CA at 1-866-558-2793.

# CA SOFTWARE MAINTENANCE RENEWAL NOTICE



Below is your maintenance renewal notice and includes the MSRP and product SKU information needed to renew the Maintenance on your CA software. Please contact your preferred reseller to obtain actual pricing.

All software maintenance must be renewed within 60 days of the maintenance expiration date to avoid any lapse in technical support and upgrade fees. Please make sure your software maintenance is active on all products owned.

**By keeping the software maintenance active you can save up to 40% off the cost of purchasing upgrades or full products.**

## Maintenance Renewal Notice

License Number: USAG388541

| Renewal Product No. | Total Units | Description | Unit Price | *Estimated MSRP |
|---|---|---|---|---|
| GHRERWIN49900GH | 10 | AllFusion Erwin Data Modeler - Maintenance Renewal - 2 Years Enterprise Maint Renewal | $1,436.20 | $14,362.00 |

**Must purchase by: 04/29/2006**

**\*Estimated Total MSRP for Maintenance Renewal: $14,362.00**

\*Price does not reflect the cost of the media kit.
\*All payments should be sent to your local reseller
\*\*ease mention Campaign Code: MR06.

If there is any discrepancy in the data displayed on this statement or on your personal web page, please contact your local CA Reseller for assistance or call CA at 1-866-558-2793.